IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-20 Erie |
| | ) | |
| JEFFREY SCOTT BEIMEL | ) | |

**BRIEF OF THE UNITED STATES IN OPPOSITION
TO DEFENDANT'S MOTION FOR RECOMMENDATION
TO BUREAU OF PRISONS TO TRANSFER DEFENDANT TO
HOME CONFINEMENT**

On September 10, 2018, Beimel waived indictment and pleaded guilty to a one count

Information charging him with possessing child pornography from in and around November

2013, to in and around December 2015.  On January 10, 2019, Beimel was sentenced to a 36

month term of imprisonment to be followed by 5 years of supervised release.  A check of the

Bureau of Prisons (BOP) website on April 7, 2020, reveals that Beimel is currently incarcerated

at FCI-Elkton and has a release date of October 9, 2021.  Thus, Beimel has slightly more than 18

months left to serve on his sentence.

Beimel seeks a recommendation from the Court that he be immediately released from

FCI-Elkton to a term of home confinement. He makes his request pursuant to two memoranda

issued by Attorney General William Barr on March 26, 2020 and April 3, 2020 respectively.

Beimel's request stems from the presence of COVID-19 infections at FCI-Elkton.  A review of

the Bureau of Prison's website on April 7, 2020, reveals that FCI-Elkton has 8 inmates and 1

staff member with confirmed diagnoses of COVID-19 and 3 inmate deaths related to COVID-19.

Beimel's motion for a home confinement recommendation should be denied for several

reasons.  First, the Court does not have the authority to order or even recommend that Beimel be

transferred to home confinement.  Second, Beimel's motion is premature because the Bureau of

Prisons is already engaged in a comprehensive review of inmates at affected facilities to

determine amenability for release to home confinement.  Third, Beimel does not have risk factors

for contracting COVID-19 and his child pornography conviction should preclude his release.

## The Authority of the Court

It is well established that "[r]unning a prison is an inordinately difficult undertaking that

requires expertise, planning, and the commitment of resources, all of which are peculiarly within

the province of the legislative and executive branches of government."  *Turner v. Safley*, 482

U.S. 78, 84-85 (1987).  "Prison administration is, moreover, a task that has been committed to

the responsibility of those branches, and separation of powers concerns counsel a policy of

judicial restraint."  *Id*. at 85.  As such, the District Court may only consider whether there is clear

evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its

authority. *Id*.; *Smith v Warden, Alderson Prison Camp*, 2018 WL 7104891, *7 (S.D. Ky. Dec.

21, 2018).  In *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 251 (3d Cir. 2005), our

appellate court noted that simply because "the BOP may assign a prisoner to CCC does not mean

that it must." As such, no defendant has a right to be placed in home confinement and this Court

is without authority to order the Bureau of Prisons to release Beimel. Thus, this request must be

denied.

It is also highly questionable whether this Court has the authority, more than a year after

the sentencing, to now alter the sentence to include a recommendation regarding the service of it.

*See United States v. Ferguson, 2018 WL 5095149, at *2-3 (D.S.C. Oct. 19, 2018) (reviewing

cases); United States v. Samuels*, No. 12-CR-200, Doc. 530 (W.D. Pa. Aug. 17, 2017) (denying a

similar motion for a post-sentencing recommendation regarding halfway-house placement).

In *Smith v Warden, Alderson Prison Camp*, 2018 WL 7104891, *7 (S.D. Ky. Dec. 21,

2018), in addition to stating that a District Court does not have the authority to ***order*** a specific

period of RRC placement, the Court also determined that "[t]his Court does not have the authority to make [a RRC] *recommendation*."

Further, Beimel's requested change to his previously imposed sentence would conflict with established federal law, including Federal Rules of Criminal Procedure 35 and 36. These Rules significantly limit a district court's authority to alter a sentence after it has been imposed.

Additionally, such a practice would also create greater tension between the issuance of a non-binding judicial recommendation and "the prohibition on federal courts issuing non-binding advisory opinions." *United States v. Martin*, 2017 WL 3480692, at *1 (11th Cir. 2017).

Even assuming, *arguendo,* that this Court could validly issue such a recommendation, it is not at all clear that it would be wise to do so. "Running a prison … requires expertise, planning, and the commitment of resources, and thus is a task for which the separation of powers doctrine counsels judicial restraint." *Myers v. Williams*, 2015 WL 9304550, at *6 (N.D.W.V. December 21, 2015) (internal quotation marks omitted) (citing *Turner*, 482 U.S. at 84-85); *United States v. Shaneeca Johnson*, 14-CR-106, Doc. 643 (W.D. Pa. Apr. 20, 2018) (finding that the BOP is in a better position to determine an inmate's placement needs).

The BOP is privy to a wide variety of information that assists them in the determination of the appropriate placement for each inmate. The BOP is dealing with the COVID-19 issue in real time at each institution.  It has knowledge and facts that the Court does not possess.  The landscape changes quickly and even unpredictably.  Thus, it is not wise for the Court to make even a recommendation under these circumstances.

## The Motion is Premature

Courts may not decide a claim that is not ripe for adjudication. *Smith*, 2018 WL 7104891 at *4 (citing *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 807 (2003)). Acting otherwise would require a court to issue an advisory opinion that is purely dicta. "The rationale behind the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been

formalized and its effects felt in a concrete way by the challenging parties." *Smith* 2018 WL 7104891 at *4 (internal quotation marks and Supreme Court citations omitted). *See United States v. Raia*, 2020 WL 1647922 (3d Cir. 2020) (strict compliance with the requirement to exhaust administrative remedies takes on added – and critical – importance given the Attorney General's directives to the BOP regarding COVID-19).

As noted above, Beimel is not scheduled to be released until October 9, 2021.  Thus, he has more than 18 months left to serve on his sentence.  More importantly, in response to Attorney General Barr's recent memoranda, the BOP has undertaken a comprehensive review of all inmates who have COVID-19 risk factors starting with the facilities where there has been an outbreak, including FCI-Elkton, where Beimel is incarcerated.  Exhibit A (BOP Update on COVID-19 and Home Confinement, Updated 6:40 PM, April 5, 2019).  The update from the BOP indicates that inmates do not need to apply to be considered for home confinement because the BOP is "urgently reviewing all inmates to determine which ones meet the <u>criteria established by the Attorney General</u>." Exhibit A (emphasis in original).  Moreover, the update indicates that the BOP has "increased resources to review and make appropriate determinations as soon as possible."

Thus, even if this Court has authority to make a recommendation, the request is premature as the BOP is currently doing everything possible to determine each inmate's eligibility for home confinement without requiring an application from the inmate.  This process should be allowed to play out before judicial intervention is sought.

<u>**Home Confinement is Not Warranted**</u>

Beimel seeks immediate release to home confinement based upon the Attorney General's two recent memoranda.  He is not eligible for release to home confinement under the parameters of those memoranda.  One of the primary considerations for release to home confinement under each memorandum is the presence of risk factors that make the inmate especially vulnerable to COVID-19.  Beimel does not have these risk factors.  He is 32 years of age with no serious or even minor health issues.  (PSIR ¶ 52).

4

According to the Centers for Disease Control and Prevention (CDC) website, older adults, 65 and above are at increased risk for contracting COVID-19.  Likewise, people with chronic lung disease, moderate to severe asthma, serious heart conditions, severe obesity, diabetes, chronic kidney disease, liver disease and those who are immunocompromised are also at higher risk.  None of these conditions appear to apply to Beimel.  Thus, he is not at higher risk for contracting COVID-19 and is likely ineligible for immediate release to home confinement.  If Beimel is entitled to home confinement because of COVID-19 it is difficult to imagine that anyone will still be incarcerated at FCI-Elkton after the BOP completes its review.

Further, it appears likely that Beimel's child pornography conviction may make him ineligible as well since Attorney General Barr's March 26, 2020 memorandum indicates that "[s]ome offenses, such as sex offenses, will render an inmate ineligible for home detention." *Memorandum*, March 26, 2020, p. 2.  The memorandum further indicates that "[o]ther serious offenses should weigh more heavily against consideration for home detention." *Id*.  It is at least reasonable to presume that child pornography offenses will be included in the other offenses precluding release to home confinement.  In any event, the BOP is in the best position to implement the Attorney General's directives based upon the evolving conditions at each institution.

For the foregoing reasons, Beimel's motion should be denied.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

s/Christian A. Trabold
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013